## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN M. MENCKE for N.V., | ) | CASE NO. 1:14-CV-00702 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | | |

Plaintiff, Susan M. Mencke ("Plaintiff"), challenges the final decision of

Defendant, Carolyn W. Colvin, Commissioner of Social Security ("the Commissioner"),

denying the application of Plaintiff's son, N.V. ("Claimant"), for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* ("the

Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before

the undersigned United States Magistrate Judge pursuant to the consent of the parties

entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below,

the Commissioner's final decision is AFFIRMED.

## I.   PROCEDURAL HISTORY

On May 17, 2010, Plaintiff filed an application for SSI on behalf of Claimant.

(Transcript ("Tr.") 21.)  The application was denied initially and upon reconsideration,

and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.*)  On

July, 18 2012, an ALJ conducted Claimant's hearing.  (*Id.*)  Claimant was represented

by an attorney.  (*Id.*)  On November 6, 2012, the ALJ found Claimant not disabled.  (Tr.

18.)  On January 30, 2014, the Appeals Council declined to review the ALJ's decision,

and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On March 31, 2014, Plaintiff filed a complaint on behalf of Claimant challenging

the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing

in this case.  (Doc. Nos. 15, 17.)

Plaintiff asserts the following sole assignment of error: The ALJ erred in finding

that Claimant had less than marked limitation in the domain of acquiring and using

information.

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Claimant was born in October 2006, and was a preschooler on the date Plaintiff

filed Claimant's application for SSI.  (Tr. 24.)  Claimant had not engaged in substantial

gainful activity at any time relevant to the disposition of his application.  (*Id.*)

### B.  Medical Evidence and School Reports

On October 9, 2009, Marija Turcinov, Claimant's school psychologist, evaluated

Claimant.  (Tr. 193-196.)  Ms. Turcinov had some concern about Claimant's social,

receptive, expressive, cognitive, and fine motor skills, and stated that he should focus

on improving his vocabulary, impulse control, and physical aggression.  (*Id.*)  She

further noted that Claimant had an average understanding of prepositional phrases and

functionality of objects.  (Tr. 196.)  He had average ability to find similarities between

objects and concepts and average ability to label everyday objects.  (*Id.*)  During free

play, Claimant spoke very loudly and had difficulty with volume control.  (*Id.*)  Most of

Claimant's speech was undecipherable and he did not respond to most adult directives

or attempts to modify his behavior.  (Tr. 197.)  Ms. Tucinov noted that Claimant needed to increase his vocabulary knowledge and verbal comprehension and that his impulsivity, high energy levels, and physical aggression needed to be addressed within the classroom.  (*Id.*)  She further noted that Claimant's play and interactive social skills resulted in inappropriate physical aggression and needed to be channeled into appropriate and positive play skills.  (*Id.*)  She concluded that Claimant appeared to have average intelligence.  (*Id.*)

On October 9, 2009, Daphne Fredricks, a physical therapist, indicated that Plaintiff's motor and other physical capabilities were age-appropriate.  (Tr. 198.)  Sherri Clampitt-Dean, M.Ed., opined that Claimant needed to work on behavioral control and social interaction.  (Tr. 199.)

On October 13, 2009, speech therapist Natasha Sowell evaluated Claimant and noted that he had a mild speech and language delay.  (Tr. 202.)  Claimant was understood by the therapist and other unfamiliar listeners although some articulation errors were noted.  (*Id.*)  Ms. Sowell concluded that Claimant was not a good candidate for speech and language services.  (*Id.*)

In June 2010, Gwen Seaman, Claimant's preschool special education teacher, indicated that Claimant recently suffered an injury and was missing approximately one class per week, and noted that Claimant was receiving treatment for emotional problems as well as speech therapy.  (Tr. 168.)  She opined that Claimant had some problems acquiring information, that his manipulative and self-care activities were age-appropriate, and he had difficulties paying attention and socializing appropriately with classmates.  (Tr. 168-177.)

On September 16, 2010, Carol Theil, M.A., a licensed speech-language pathologist, performed a consultative examination of Claimant. (Tr. 531.) Claimant's mother reported that Claimant was difficult to understand and became frustrated when he could not be understood. (*Id.*) Ms. Theil stated that Claimant's language skills were close to age-appropriate levels, but he had difficulty in some areas such as identifying colors, associating common nouns with basic categories, using longer sentences, describing how common objects were used, marking possession, answering wh-questions logically, an identifying shapes. (*Id.*) Individual speech-language therapy was recommended one time per week, for 30 minutes each session for a minimum of six months to address multiple issues including speech sound productions, expressive language skills such as using longer sentences, and Claimant's overall intelligibility. (*Id.*)

Throughout the relevant period, Claimant's mother provided a number of statements regarding Claimant's condition. She indicated that Claimant had trouble learning, had poor speech skills and behavior, did not play with other children, and suffered from asthma and gastroesophogeal reflux disease (GERD). (Tr. 152-154, 160.) She further stated that Claimant could not pay attention, fought with others, had trouble at school, and had a vision problem. (Tr. 220, 225-226, 236.) In February 2011, Claimant's mother reported that Claimant completed his homework, played with his brother, helped feed the family pets, and put his toys away, but he had behavioral problems and delayed speech. (Tr. 230-233.) In April 2011, Claimant's mother told assessors at the Murtis Taylor Clinic that Claimant hit and bit others without provocation, attacked his brother, broke things, wrote on walls, would not pick up after

4

himself, hurt animals, and had to be supervised when playing with friends.  (Tr. 651.)

In October and November 2010, state reviewing psychiatrist Malika Haque, M.D., and state reviewing psychologists Karen Terry, Ph.D., and Melissa Hall, M.A., reviewed the medical evidence and determined that Claimant had mental health impairments, asthma, GERD, and speech and language delays.  (Tr. 523.)  They opined that Claimant had marked limitations in interacting and relating with others, no limitation in his ability to manipulate objects, and less than marked limitations in the following domains: acquiring and using information; attending and completing tasks; caring for self; and health and physical well-being.  (Tr. 525-526.)  The state agency reviewers concluded that Claimant did not have an impairment that met, medically equaled, or functionally equaled a listing.  (Tr. 523.)

On February 3, 2011, Ganga Srinivas, M.D., evaluated Claimant.  (Tr. 566.)  Dr. Srinivas noted that Claimant was continuing to follow routines and he was learning well. (*Id.*)  Claimant's speech was improving and he had better focus and concentration, but he still had challenges with focusing on and completing homework.  (*Id.*)  Claimant was receiving "stars" at school.  (*Id.*)  Dr. Srinivas listed Claimant's "active problems" to include esophageal reflux, speech/language delays, asthma night-time symptoms, behavioral problems, allergic rhinitis, and attention deficit hyperactivity disorder (ADHD). (Tr. 567.)

In Claimant's 2011 individualized education program (IEP) assessment by the Cleveland Municipal School District, the examiners indicated that Plaintiff, age four, was in preschool special education classes in a single classroom learning environment.  (Tr. 624.)  The examiners noted that Claimant thrived in a classroom environment that had

5

structure and predictable routines and expectations.  (*Id.*)  They noted that Claimant

followed class expectations, responded to peer behavior, helped his teacher without

being asked, and could sit through story time lasting more than 15 minutes, but he had

below-average vocabulary, made speech errors, and had ongoing behavioral problems.

(Tr. 242-244, 624.)  Claimant's receptive speech developed more quickly than did his

expressive speech, but he had improved in both areas.  (Tr. 244.)  On the On-Word

Picture Vocabulary test, Claimant's scored in the low-average range.  (*Id.*)  He had

average cognitive skills.  (Tr. 624.)  Pre-Academic skills showed that in the context of

circle activities, Claimant could name the days of the week and extend A-B patterns;

with cues, he could say a word while pointing to it when using structured sentences.

(*Id.*)  He recognized five of the eight basic colors and could classify objects by color,

size, and shape.  (*Id.*)  He did not apply labels to shapes, but could use the words "big"

and "little" to describe objects.  (*Id.*)

## C.    Hearing Testimony

### 1.    Plaintiff's Hearing Testimony

Claimant's mother, Plaintiff, testified at Claimant's hearing.  Plaintiff testified that

Claimant's most serious problem is his ADHD, as he could not sit still or concentrate

very long.  (Tr. 50.)  Plaintiff testified that Claimant also had significant speech

problems, asthma, and GERD.  (Tr. 50-51.)  Claimant began receiving speech therapy

and counseling from Help Me Grow when he was two and a half years old.  (Tr. 52.)  He

took medications for ADHD and to help him sleep at night.  (Tr. 54.)  He also received

treatment for asthma.  (Tr. 62.)

Plaintiff stated that at home, Claimant climbed the walls, threw toys, and hit his younger brother. (Tr. 53.)  He also hit and threw his pets. (Tr. 55.)  Plaintiff testified that Claimant's teacher sent notes home daily, sometimes indicating that Claimant had bad behavior in class. (Tr. 56.)  Plaintiff stated that it took Claimant two hours to complete his homework each night because he could not sit still. (Tr. 57.)  Claimant sometimes escaped from the house. (Tr. 61.)

### III.   STANDARD FOR DISABILITY

An individual under the age of 18 shall be considered disabled if he has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last, for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i); *Miller ex rel. Devine v. Comm'r of Soc. Sec.*, 37 F. App'x 146, 147 (6th Cir. 2002) (per curiam).  There is a three-step analysis for determining whether a child-claimant is disabled.  First, the Commissioner must determine whether the child is engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(a); *Miller ex rel. Devine*, 37 F. App'x at 148.  Second, if the child is not engaged in substantial gainful activity, the Commissioner must determine whether the child suffers impairments or a combination of impairments that are "severe" and that are expected to result in death or have lasted or are expected to last for a continuous period of not less than 12 months. *See* 20 C.F.R. § 416.924(a); *Miller ex rel. Devine*, 37 F. App'x at 148.  Third, if the child suffers a severe impairment or combination of impairments that meet the Act's durational requirement, the Commissioner must

determine whether they meet, medically equal, or functionally equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  *See* 20 C.F.R. § 416.924(a); *Miller ex rel. Devine*, 37 F. App'x at 148.  If the child's severe impairment or combination of impairments meets, medically equals, or functionally equals an impairment in the Listings, the child will be found disabled.  *See* 20 C.F.R. § 416.924(a); *Miller ex rel. Devine*, 37 F. App'x at 148.

To determine whether a child's impairment functionally equals the Listings, the Commissioner assesses the functional limitations caused by the impairment in six domains of functioning:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  20 C.F.R. § 416.926a.  An impairment functionally equals the Listings if the child has a "marked" limitation in two domains, or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(a).  A "marked" limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  An "extreme" limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).

### IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant was born in October 2006.  Therefore, he was a preschooler on May 17, 2010, the date the application was filed, and is currently a school-age child.

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision.

3. The claimant has the following severe impairments: gastrointestinal reflux disease, asthma, attention deficit hyperactivity disorder, and a speech and language delay.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant does not have an impairment or combination of impairments that functionally equals the listings.

6. The claimant has not been disabled, as defined in the Social Security Act, since May 17, 2010, the date the application was filed.

(Tr. 24-34.)

## V.   LAW & ANALYSIS

### A.   Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that

the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.  Plaintiff's Assignment of Error

#### 1.  The ALJ Erred in Finding That Claimant Had Less Than Marked Limitation in the Domain of Acquiring and Using Information.

Plaintiff argues that the ALJ's finding that Claimant suffered from less than marked limitations in the domain of acquiring and using information was not supported by substantial evidence. According to Plaintiff, the ALJ erred "by selectively considering evidence that supported his ultimate conclusion while ignoring the medical, school, and testimonial evidence that provided a longitudinal history of [Claimant's] speech and language dysfunction and supported a finding of 'disabled.'" (Plaintiff's Brief ("Pl.'s Br.") 18.) For the following reasons, Plaintiff's argument is without merit.

In assessing a claimant's functioning in the domain of acquiring and using information, the agency considers "how well [a claimant] acquire[s] or learn[s] information, and how well [a claimant] use[s] the information [he has] learned." 20 C.F.R. § 416.926a(g). The regulations offer the following examples of limited functioning in this domain: difficulty recalling important things learned in school the day before; difficulty solving mathematics questions or computing arithmetic answers;

10

talking only in short, simple sentences and having difficulty making explanations. 20 C.F.R. § 416.926a(g)(3)(iii)-(v). These examples, however, are not exhaustive, and do not necessarily describe the degree of limitation in the domain at issue. 20 C.F.R. § 416.926a(g)(3).

Here, substantial evidence supports the ALJ's conclusion that Claimant's limitation in the area of acquiring and using information was less than marked, and the ALJ discusses this evidence at length. (Tr. 28-29.) In determining that Plaintiff had a less than marked limitation in this domain, the ALJ noted that state agency medical experts Malika Haque, M.D., Karen Terry, Ph.D., and Melissa Hall, M.A., opined that Plaintiff did not have an impairment or combination of impairments that functionally equaled the listings. (Tr. 29, 525-526.) Furthermore, these reviewing mental health experts specifically concluded that Plaintiff had a less than marked limitation in the domain of acquiring and using information. (*Id.*) In drawing this conclusion, the experts noted that although Claimant had a speech delay, he was not considered a good candidate for speech and language therapy. (Tr. 525.) They further noted that Claimant's language was within normal limits, and his teacher had reported no more than moderate limitations in this domain. (*Id.*) Their report also notes that they considered school reports indicating Claimant's difficulties with vocabulary, reading, and writing in determining that Claimant had a less than marked limitation in acquiring and using information. (*Id.*)

In addition to the state agency expert opinions, other evidence in the record, which the ALJ discussed at length, supports the ALJ's conclusion that Claimant had less than marked impairment in acquiring and using information. The ALJ noted that

11

Claimant attended special education classes due to his issues with expressive and behavioral capabilities, but understood both English and Spanish. (Tr. 28.) The ALJ further explained that in Claimant's 2010 IEP assessment, the examiners indicated that Claimant followed class expectations and could sit through story time lasting over fifteen minutes, although he had below-average vocabulary and made speech errors. (Tr. 28, 207-219, 241-244.) Claimant was able to demonstrate classification by color, size, shape, and function, but had trouble grouping items. (Tr. 244.) Furthermore, the ALJ specifically noted that in 2010, Claimant's preschool teacher indicated that Claimant had some obvious problems acquiring and using information. (Tr. 28, 169.)

The ALJ also properly considered the specialist evaluations in the record when determining Claimant's limitations. (Tr. 28.) He noted that in October 2009, speech therapist Natasha Sowell indicated that Claimant had a mild speech and language delay, but did not require assistive services. (Tr. 28, 202.) In finding that Claimant had less than marked limitation in acquiring and using information, the ALJ specifically acknowledged the findings of speech pathologist Carol Theil, M.A., who concluded that Claimant's language skills were close to age-appropriate levels, but that Claimant had trouble in some areas and grew frustrated when he could not be understood. (Tr. 28-29, 530-532.) The ALJ noted that a recent examination report from Dr. Ganga Srinivas revealed that Claimant had speech improvement, better focus and cooperation, and rewards for doing well at school, although he still had trouble focusing on completing homework. (Tr. 29, 566.) The ALJ further acknowledged the testimony of Claimant's mother, who complained that Claimant had trouble sitting still, required constant supervision, and received frequent complaints about Claimant's behavior from his

12

school.  (*Id.*)  The ALJ noted that he gave "some weight" to Claimant's mother's allegations through February 2011.  (Tr. 27.)

Based on the evidence in the record as a whole, including the opinion of three state agency mental health experts, the ALJ reasonably concluded that Claimant had some limitation in the domain of acquiring and using information, but not a marked limitation.  A review of the ALJ's decision shows that the ALJ did not, as Plaintiff alleges, ignore the medical, school, and testimonial evidence of record.  Rather, the ALJ considered this evidence and found that Claimant was limited in the domain of acquiring and using information, but not "markedly" limited.

Finally, Plaintiff maintains that the ALJ improperly disregarded Ms. Theil's September 2010 speech-language evaluation/consultation report in determining that Claimant had less than marked limitation in the domain of acquiring and using information.  (Tr. 531.)  Ms. Theil concluded that Claimant's speech was only 50% intelligible in known and unknown contexts and contained atypical sound patterns based on the results of the Goldman Fristoe Test of Articulation ("G-FTA").  (*Id.*)  She diagnosed Claimant with a moderate articulation disorder and noted that he was only capable of sound productions using one sound instead of a two sound consonant blend (*e.g.,* boo/blue).  (*Id.*)  Claimant also demonstrated atypical sound production patterns for /s, z, sh, and ch/ sounds, and the g/d, k/ch, y/l, w/r, d/j, t/th, and b/v sound substitutions.  (*Id.*)  Ms. Theil noted that Claimant demonstrated some difficulty identifying colors, associating common nouns with basic categories, and using longer sentences.  (*Id.*)  She recommended speech-language therapy one time per week for 30 minutes for a minimum of six months "to address areas of difficulty, including speech

13

sound productions and language to enable participation in the communication demands of everyday activities." (*Id.*)

According to Plaintiff, the results of Ms. Theil's testing equated to at least a marked limitation in the domain of acquiring and using information. In drawing this conclusion, Plaintiff cites Social Security Ruling 98-1p, which provides, in part, that a child between the ages of three and a half and five has a marked speech limitation if the following is true: "Sounds, omissions, distortions, or phonological patterns, **or** fluency (rate, rhythm of speech) not typical for this group; **or** significant aberrations in vocal pitch, quality or intensity; **and** b. Conversation is intelligible no more than ½ of the time on first attempt; **and** c. Intelligibility improves with repetitions." S.S.R. 98-1p (emphasis in original). Plaintiff maintains that since Ms. Theil concluded that Claimant's speech was only 50% intelligible in known and unknown contexts and contained atypical sound patterns based on the results of the G-FTA and her personal observations, the ALJ should have found that, pursuant to S.S.R. 98-1p, Claimant had a marked limitation in acquiring and using information. This argument is not well taken.

Social Security Ruling 98-1p does not address the effect of a child's speech limitations on his ability to acquire and use information. Indeed, the regulation makes no reference to the domain of acquiring and using information. Rather, the ruling addresses the evaluation of speech disorders in combination with cognitive limitations and provides guidance for determining when a child has a "marked" or an "extreme" limitation in each of those areas. The ruling specifically states: "The discussions in this Ruling address the evaluation of the severity of impairments affecting speech and

cognition. *They presume that the existence of such medically determinable impairments has already been established.*" *Id.* (emphasis added).  While Plaintiff's Brief discusses at length Claimant's speech and language delay–which the ALJ considered a "severe impairment"–Plaintiff does not discuss any evidence relating to Claimant's cognitive functioning, nor does Plaintiff address the interplay, if any, between Claimant's speech limitations and limitations in cognition.  Thus, even if Claimant had a "marked" limitation in his speech, Plaintiff fails to explain how that fact, alone, would require a finding that Claimant had a marked limitation in the domain of acquiring and using information.  Plaintiff assumes, without explaining, that a marked limitation in speech requires a finding that Claimant was markedly in acquiring and using information.

Moreover, in his decision, the ALJ adequately addresses Claimant's speech impairment in finding that Claimant does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  The ALJ explained:

> Regarding the claimant's speech, the evidentiary record shows the claimant can communicate with others, has language skills in both Spanish and English, plays with other children, and was noted by his speech therapist to have no more than mild speech or language delay.  (4E28-32, 37; 16F1) Carol Thiel, MA, a licensed speech-language pathologist, stated the claimant's language skills are close to age-appropriate levels, but the claimant has trouble in some areas and gets frustrated when he has trouble being understood.  (12F) **The undersigned does note the claimant's 2010 test scores in Exhibit 12F, but does not find these scores support a finding the claimant's speech limitations even approach a listing-level impairment**.

(Tr. 25) (emphasis added).  Thus, the ALJ expressly acknowledged that he considered the results of Ms. Theil's September 2010 speech-language evaluation/consultation,

and concluded that those results supported a finding that Claimant's speech limitations did not rise to listing-level severity.  The Court will not disturb that finding, as substantial evidence, discussed at length by the ALJ and summarized above, supports the ALJ's determination that Claimant had less than marked impairment in acquiring and using information.  Accordingly and for the foregoing reasons, Plaintiff has not presented a basis for remand.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: April 27, 2015